# SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made this 10th day of August, 2022 ("Effective Date"), by and between QUAN DINH TRAN ("Debtor"), EVAN TRAN, and QUAN DINH TRAN AND EVAN TRAN, tenants by the entirety (collectively, the "Tran Parties") and NICOLE CAMERON, as Chapter 7 Trustee for the bankruptcy estate of Quan Dinh Tran ("Trustee"). Collectively, the Tran Parties and the Trustee shall be referred to herein as the "Parties." The Parties hereby agree as follows:

## RECITALS

**WHEREAS**, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 29, 2020 ("Petition Date") in the United States Bankruptcy Court, Middle District of Florida, Tampa Division (the "Bankruptcy Court"), Case No. 8:20-bk-05750-CPM (the "Bankruptcy Case").

**WHEREAS**, Trustee is the duly appointed trustee of Debtor's bankruptcy estate.

**WHEREAS**, Evan Tran is Debtor's spouse. Debtor filed a Schedule C on August 24, 2020 (Doc. 20) ("Schedule C") in which he claimed certain property as exempt under Chapter 222, Florida Statutes, and certain personal property to be excluded from the bankruptcy estate because it was owned as tenants by the entireties by the Debtor and Evan Tran (the "Entireties Property").

**WHEREAS**, Evan Tran asserts that certain personal property that is located at the Debtor's homestead is her individual property (collectively, "Wife's Property")

**WHEREAS**, the Trustee has identified various asserted and unasserted claims, causes of action, and contested matters that the Trustee may have against the Tran Parties in the Bankruptcy Case, including, but not limited to:

    a)    Any and all objections to the real and personal property claimed as exempt by the Debtor on his Schedule C;

    b)    Disputes as to whether the Entireties Property and Wife's Property are property of the bankruptcy estate; and

    c)    Other unasserted claims against the Tran Parties based upon acts, omissions, transfers or transactions of the Debtor prior to the date of this Agreement.

(separately and collectively, the "Claims"). For purposes of this Settlement Agreement, the term "Claims" shall exclude any claims that the Trustee may assert in and to any tax refund ("Refund")

**EXHIBIT A**

that may be due to the Debtor and Evan Tran (if any) as a result of amendments to their joint federal income tax return for pre-petition periods (the "Amended Returns"). The most recent drafts of the Amended Returns do not reflect that any Refund is due. The Trustee and Tran Parties reserve all rights and claims in and to any Refund that may be due to the Debtor and Evan Tran if the Amended Returns that are ultimately filed with the IRS result in the payment of a Refund.

**WHEREAS**, the Parties have agreed, subject only to approval of this Settlement Agreement by the Bankruptcy Court, to resolve all Claims by and between them on the terms set forth in this Settlement Agreement, including any objections to claimed exemptions and any claims under Chapter 5 of the Bankruptcy Code.

**WHEREAS**, the Tran Parties deny any liability for all asserted or unasserted claims by the Trustee or any other party. The Parties agree that this Agreement does not constitute a finding of any liability of the Tran Parties but is a good faith resolution in order to avoid the uncertainty of outcome and costs of litigation.

**THEREFORE**, it is hereby agreed as follows:

## SETTLEMENT TERMS

In consideration of the agreements, promises, and warranties set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Recitals**. The Parties acknowledge and agree that the above recitals are true and correct and incorporated herein.

2. **Contingent on Bankruptcy Court Approval.** The Parties acknowledge that this Settlement Agreement is contingent upon the entry of a final, non-appealable order approving this Settlement Agreement and the terms stated herein by the Bankruptcy Court ("Final Order"). The Parties shall cooperate to obtain the Final Order as soon as possible. Should the Parties be unable to obtain the Final Order, this Settlement Agreement shall be null and void, of no force or effect, and the Parties shall be immediately returned to the *status quo ante*, as though the Settlement Agreement had never been executed.

3. **Settlement Terms.**
    a. The Tran Parties shall make a total payment of $65,000 (the "Settlement Payment") to the Trustee, as follows: $25,000 within five (5) business days after the Effective Date, and, six (6) monthly payments of $6,666.67 commencing one month after the

Effective Date and continuing on the same day of each month thereafter. In the event the Tran Parties fail to make the entire Settlement Payment the Trustee shall be entitled to retain all payments made, and the Parties shall be restored to the status quo ante immediately prior to the Effective Date.

b. Effective upon receipt of the full Settlement Payment:

   i. An order shall be entered allowing as exempt all property claimed by the Debtor on his Schedule C, and overruling any and all objections to such claims of exemption;

   ii. The Trustee and the bankruptcy estate will abandon and shall have no further claim or interest in the Entireties Property or the Wife's Property; and

   iii. The Trustee and the bankruptcy estate shall forever release, discharge, and waive, and shall be deemed to have released, discharged, and waived, any and all Claims that she, on behalf of the Debtor's estate, may have against any of the Tran Parties, arising under or related to the bankruptcy case, including without limitation, the Claims, other than the obligations under this Settlement Agreement; provided, however, that nothing in this Settlement Agreement shall release any claims the Trustee may have in and to any Tax Refunds or property of the estate that was not truthfully and accurately disclosed on the Debtor's bankruptcy schedules and statement of financial affairs or the appraisal attached hereto as Exhibit "A.".

c. Effective on the Effective Date:, the Tran Parties each shall forever release, discharge, and waive, and shall be deemed to have released, discharged, and waived, any and all claims, costs (including attorneys' fees and costs) and causes of action, any of them may have whatsoever against the Trustee and the Debtor's bankruptcy estate (including without limitation any claim to the proceeds from the Trustee's sale of 1942 Carolina Avenue, N.E. that are held by the Trustee) other than the obligations under this Settlement Agreement. For the avoidance of doubt, the foregoing release includes the rights (if any) of any of the Tran Parties to file a proof of claim or participate any distribution to creditors in the Bankruptcy Case.

5. **No Reliance**. Each Party represents to the other that (i) it is not relying upon any representations except those expressly set forth in this Settlement Agreement; (ii) it has consulted with its own business, financial, investment, tax, accounting and legal advisors to the extent it has deemed appropriate in connection with its decision to enter into this Settlement Agreement; and (iii) it has independently evaluated the potential financial benefits and risks, and the tax and accounting implications and its policies and objectives of this Settlement Agreement, and has independently decided to enter into this Settlement Agreement on the basis of such evaluation.

6. **Time of the Essence.** Time is of the essence in the performance of all of the Parties' obligations hereunder.

7. **Jurisdiction**. The Bankruptcy Court shall have exclusive jurisdiction to enforce the terms of this Settlement Agreement.

8. **Only Written Agreements and Amendments**. In the event that any subsequent negotiations between the Parties are commenced in connection with this Settlement Agreement, the Parties agree that no one shall be bound by any agreement on any issues until (a) agreement is reached on all issues; and (b) agreement on all issues has been reduced to a written agreement signed by all of the Parties. The Parties agree that this Settlement Agreement may only be amended by a written document signed by all of the Parties.

9. **Entirety of Agreement**. This Settlement Agreement contains the entire, complete, and integrated statement of each and every term and provision agreed to, by and among the Parties hereto, and it is not subject to any condition not provided for herein.

10. **Choice of Law and Personal Jurisdiction**. This Settlement Agreement shall be construed under and interpreted in accordance with the laws of the State of Florida and Bankruptcy law. All Parties agree to submit to the personal jurisdiction of the Bankruptcy Court in connection with any action to enforce or interpret this Settlement Agreement.

11. **Attorneys' Fees.** To the extent allowed by the documents and applicable law, if any action or proceeding is brought to enforce or interpret this Settlement Agreement, the prevailing party, in addition to all other legal or equitable remedies possessed, shall be entitled to be reimbursed for all costs and expenses, including reasonable attorney's fees incurred by reason of such action or proceeding.

12. **Successors and Assigns.** This Settlement Agreement will be binding upon and inure to the benefit of the Parties hereto and their respective permitted successors, assigns, heirs,

devisees, executors, administrators, affiliates, representatives, assigns, officers, agents, and employees wherever the context requires or admits.

13.  **Construction**.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

14.  **Representations and Warranties.**  Each individual executing this Settlement Agreement represents and warrants that he or she is duly authorized to execute this Settlement Agreement, has all requisite power, authority, and approval required to enter into, execute, and deliver this Settlement Agreement, including the releases given in this agreement, has read this Settlement Agreement, fully knows and understands its contents, voluntarily executed this Settlement Agreement, and has had the opportunity to consult with counsel before executing this Settlement Agreement.

15.  **Counterparts**.  This Settlement Agreement may be executed in any number of counterparts, each of which shall be an original and enforceable against any party who signed it, but all of which together shall constitute one and the same document.

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement as of the date appearing on the first page of this Settlement Agreement.


**[Signatures on Following Pages]**

QUAN DINH TRAN

_____

EVAN TRAN

_____

NICOLE CAMERON, as Chapter 7 Trustee for the
bankruptcy estate of Quan Dinh Tran

_____

STATE OF FLORIDA           )
                           ) ss.
COUNTY OF Hillsborough     )

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization by NICOLE CAMERON, as Chapter 7 Trustee for the bankruptcy estate of Quan Dinh Tran, this 4th day of August, 2022. She [ ] is personally known by me; or [X] who has produced FL driver license as identification.

_____
Notary Public
State of Florida
My Commission Expires: 11-08-25

HARLEY-JEAN SCOTT
Notary Public - State of Florida
Commission # HH 196736
My Comm. Expires Nov 8, 2025
Bonded through National Notary Assn.

# EXHIBIT "A"

Personal Property - Appraisal

Nicole M. Cameron, Trustee                                                          April 21, 2021
235 Apollo Beach Blvd. #231
Apollo Beach, Florida 33572

Re:     Quan Dinh Tran
        Case No. 8:20-bk-05750-CPM

Dear Ms. Cameron,

As you requested, Read and Kelley Estate Services, LLC conducted a summary appraisal of personal property on March 28, 2021 at 1942 Carolina Avenue, Saint Petersburg, Florida. It is understood that the property included in this report belongs to Dr. Quan Dinh Tran and/or his wife. Dr Tran was present during our inspection. Values are effective as of the date of this report.

The object of this appraisal was to determine Fair Market Value for use by the United States Bankruptcy Court in the administration of this case. Any other use renders this appraisal null and void. Values stated do not reflect any expenses that may be incurred should these items be sold, such as advertising costs or selling commissions.

This report is intended for use only by you, our client, and the United States Bankruptcy Court. Use of this report by others is not intended, nor is this report an indication of, or a certificate of title or ownership. The identification of the interest of the party(ies) involved is simply that represented to the appraiser by such party and no inquiry or investigation will be made nor is any opinion to be given as to the truth of such representation. If this report is reproduced, copied, or otherwise used, it must be done so in its entirety including the cover document and all attachments.

The appraisal report has been structured to comply with the Internal Revenue Code pertaining to Bankruptcy. The definition of Fair Market Value as set forth in that section of the Code is as follows: "The price in terms of money which a property would bring in a competitive and open market under conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably, and assuming the price is not affected by undue stimulus."

In this appraisal, value has been established by the market data approach. This method of valuation involves comparison of the property with similar items which have sold within the market considered most common for each item. Markets considered and the recent sales prices reviewed for items comparable to those listed include, but are not limited to, auctions, used furniture stores, used electronics and appliance stores, yard sales, flea markets, pawn shops, internet on-line sales and auctions, personal observation, recognized price guides, classified advertisements as well as reviewed sales by dealers and retailers.

Market analysis appears normal for this time of year. Because quality, condition, desirability and obsolescence affect the appropriate market where items could be purchased by the public, different markets may have been considered for different items of property.

All information concerning this report is regarded as confidential. Read and Kelley Estate Services, LLC will retain a copy of this document for no less than 24 months, however any digital photographs taken will not be kept. Furthermore, we will not allow others to have access to this report unless ordered to do so by a court of law.

In general the condition of the items was good. Any further alterations are so noted in the appraisal report. This appraisal is based on the readily apparent identity of the items appraised, and any electronic or mechanical devices or equipment is assumed to be in good working order unless otherwise noted. Any value assessments that were based solely or in part on information given to the appraiser while on site may or may not be accurate depending on the validity of the information provided.

Any items included in this report that the on-site appraiser did not personally inspect may be listed with the debtors' own values as stated in the Schedule B filed with the Trustee's office. Furthermore, any value assessments that were based solely or in part on information given to the appraiser while on site may or may not be accurate depending on the validity of the information provided.

All wood designations are based only on visual examination without benefit of laboratory analysis, which is necessary for conclusive identification. Therefore, all stated wood identities and associated values are conditional on an "appears to be" basis. Furthermore, no employee associated with Read and Kelley Estate Services, LLC represents themselves to be a certified Fine Art Appraiser and all framed artwork, prints, posters and picture values are based only on superficial visual examination. None were removed from their frames for verification or authentication, which is necessary for conclusive identification. Therefore, all stated art identities and associated values are conditional on an "appears to be" basis within the parameters of our experience.

No employee associated with Read and Kelley Estate Services, LLC in any way represents themselves to be a certified gemologist and any and all jewelry values stated are based on secondary market estimates. Furthermore gemstones are not removed from their settings to be precisely measured and all size measurements are approximate. Jewelry values in this appraisal may be based on the readily apparent identity of the items appraised and some stated identities are based only on the reliability of the MIZAR Diamond Tech Pro diamond tester and/ or the Acculab brand scale that I carry to determine weight and authenticity. Items of jewelry stamped as 10, 14 or 18 K gold are accepted as such, other items are tested with acid and results are only as reliable as the acid test provides. Gold and / or silver values may be based in full or part on spot prices from the date the items were researched.

The values expressed herein are based on the appraisers best judgment and opinion and are not a warranty that the items will realize those values if offered for sale. The values expressed are based on current information on the date the appraisal was made. No opinion is expressed as to any past or future values.

Qualifications to execute this appraisal are on file with the Trustees office.

## MRS. TRANS PERSONAL INVENTORY

1. 18k Ladies engagement ring in Platinum setting with Oval 6.21 CT color I, clarity SI1, with 0.29 total cts weight pave diamond in band and with matching pave inset band 7 grams. Retail replacement value — 168,000.00
2. Misc. costume jewelry — 75.00
3. Ladies Cartier watch Tank Collection with black leather band and stainless back 41900YK 3168 — 2,400.00
4. Cartier bracelet from the Love Collection with pave diamonds AU750 HFW602 17. — 23,000.00
5. Cartier bracelet from the Love Collection AU750 EXQ017 19.80 grams — 3,960.00
6. Cartier bracelet from the Love Collection AU750 Azz739 30.50 grams — 6,100.00
7. Cartier Juste Un Clou bracelet AY750 GRH029 — 6,150.00
8. Four gold 14k chains 6.7grams — 275.00
9. Bangel style bracelet with pave diamonds 8.2 Grams — 550.00
10. Gold 14k bracelet 23.60 grams — 1,150.00
11. Ladies clothing, coats, hats, and shoes not listed elsewhere in this report — 1,125.00
12. Chanel vintage Black quilt carry on with chain straps — 660.00
13. Pink Gucci mini backpack — 1,600.00
14. Dior Diorama bag with gold stud, chain and leather strap — 1,275.00
15. Vintage black quilted Chanel flap top handle — 1,250.00
16. Chanel sequined clutch 26479431 ID — 3,200.00
17. Valentino Rockstud Black wristlet — 596.00
18. Chanel Vintage single flap brown quilt handbag with chain and leather strap 5014776 ID — 2,500.00
1. Chanel black with gold graffiti clutch with gold chain — 2,200.00
2. Chanel houndstooth vintage handbag 28766739 ID — 3,800.00
3. Saint Laurent gold clutch — 400.00
4. Saint Laurent quilted black with gold logo bag — 400.00
5. Saint Laurent dark gold quilt with gold logo crossbody — 450.00
6. Chanel belt — 155.00
7. Anine Bing Bum bag — 90.00
8. Anine Bing black with gold trim purse box — 70.00
9. Post-petition 8 boxes Saint Laurent Leopard plates 750.00 each box new product, no secondary market — 6,000.00

**TOTAL MRS. TRANS INVENTORY**                                         **$237,431.00**

## DR. TRANS PERSONAL INVENTORY

| | |
|---|---:|
| 1. Breitling Men's watch Chrono Navitimer stainless steel | 3,100.00 |
| 2. Men's tungsten Forge band 11.70 grams | 5.00 |
| 3. Beretta model 950 handgun | 400.00 |
| 4. Men's shoes, belts, and clothing | 425.00 |

**TOTAL DR TRANS PERSONAL INVENTORY**          **$3,930.00**

## JOINT INVENTORY

### MASTER BEDROOM

| | |
|---|---:|
| 1. Spinner NXT | 525.00 |
| 2. The DB method exerciser | 35.00 |
| 3. Mirror | 200.00 |
| 4. Two faux sheep skin director chairs | 1,200.00 |
| 5. Pink ottoman | 125.00 |
| 6. Floor lamp | 90.00 |
| 7. Rug | 80.00 |
| 8. King bed | 350.00 |
| 9. Two nightstands and lamps | 300.00 |
| 10. Damaged white storage unit | 35.00 |
| 11. Sony 80" television 2017 | 600.00 |
| 12. Jane Seymour Hollywood Swank vanity with mirror and chair | 250.00 |
| 13. Minolta SRT100x older model camera | 40.00 |
| 14. Danby mini refrigerator | 30.00 |
| 15. Sentry document safe | 35.00 |

**KITCHEN / DEN**

| | | |
|---|---|---|
| 1. | Subzero cabinet front freezer & refrigerator 601R & 601F | 7,590.00 |
| 2. | Viking Professional 8 burner gas range | 7,995.00 |
| 3. | Viking microwave | 400.00 |
| 4. | Viking warming drawer | 285.00 |
| 5. | Summit wine cooler | 400.00 |
| 6. | Viking dishwasher | 450.00 |
| 7. | Assorted dishes, pots, pans, utensils, glasses, cookware, bakeware, small appliances and miscellaneous kitchenware | 200.00 |
| 8. | Table and chairs | 100.00 |
| 9. | Mirrored server, damaged | 250.00 |
| 10. | Four acrylic bar stools | 800.00 |
| 11. | Acrylic and gold table and white chairs | 300.00 |
| 12. | Wood table and eight button tufted on gold tone x base chairs | 1,000.00 |
| 13. | White sectional sofa | 650.00 |
| 14. | Two gray chairs | 800.00 |
| 15. | Hand chair | 175.00 |
| 16. | Rugs | 300.00 |
| 17. | Glass and metal hall table | 250.00 |
| 18. | Rustic mirrored coffee table | 200.00 |
| 19. | Sony 80" television | 600.00 |
| 20. | Mirrored room screen | 250.00 |
| 21. | Pink barrel chair | 225.00 |
| 22. | Velveteen sofa with gold color trim | 1,100.00 |
| 23. | Glass\acrylic and table with gold color trim | 300.00 |
| 24. | Two stools | 100.00 |
| 25. | Stone, metal and acrylic stacking table set | 250.00 |

**PLAYROOM**

| | | |
|---|---|---|
| 1. | Table and 4 chairs | 60.00 |
| 2. | Two cube storage units | 70.00 |
| 3. | Damaged round table | 35.00 |
| 4. | Sectional sofa | 200.00 |
| 5. | TCL television | 75.00 |

**CHILDRENS ROOMS**

| | | |
|---|---|---|
| 1. | Rocket bed, damaged | 200.00 |
| 2. | Two chests | 110.00 |
| 3. | Playhouse bed | 300.00 |

**HALL**

1. Yamaha 2018 Black Lacquer Disklavier — 6,000.00
2. Two Baxton Studio Tomasso like dark blue chairs and table — 650.00

**OFFICE**

1. TCL television — 50.00
2. Mirror — 25.00
3. Orion 10" telescope with skyquest base — 275.00
4. Desk — 160.00
5. Apple desk top computer, 6 years old — 300.00
6. Blue chair — 100.00

**BEDROOM**

1. Queen bed — 175.00
2. Two glass and metal tables and lamps — 280.00
3. Bose unit — 150.00
4. TCL television — 60.00
5. Faux cow fur chair — 200.00
6. Round metal table — 65.00
7. Floor lamp — 40.00
8. Rug — 30.00
9. Plexiglass hall table — 75.00

**STORAGE & DEN**

1. The leather effect action loveseats — 900.00
2. Fabric and metal sofa — 300.00
3. Holiday decorations as per schedule B — 250.00

**ROOM**

1. King bed — 250.00
2. Three mirrored stands — 200.00
3. Two glass lamps — 80.00
4. Wing back taupe chair — 175.00
5. Sony Television 60" — 250.00
6. Rug — 100.00

### HANGING ARTWORK

| | |
|---|---:|
| 1. Ashley Longshore commissioned Audrey | 11,400.00 |
| 2. J. Wingerter Beetles artwork | 6,800.00 |
| 3. Waldemar Swierzy, Moreno And Moreno | 800.00 |
| 4. Slim Aarons Beauty and the Beast | 1,200.00 |

### LAUNDRY AND GARAGE

| | |
|---|---:|
| 1. Whirlpool French door refrigerator | 250.00 |
| 2. LG washing machine and dryer | 500.00 |
| 3. Household electronics control units | 750.00 |
| 4. Four bicycles | 200.00 |
| 5. Three ladders | 100.00 |
| 6. Craftsman toolbox and contents | 200.00 |
| 7. Lawn tools | 35.00 |

### OUTSIDE

| | |
|---|---:|
| 1. Alfresco grill | 550.00 |
| 2. Primo grill | 950.00 |
| 3. 4-year-old Seiki television | 75.00 |
| 4. Concrete firepit | 500.00 |
| 5. Two chairs, 3 loungers, | 250.00 |
| 6. Concrete table and chairs | 300.00 |

### SIDE YARD

| | |
|---|---:|
| 1. Toddler climbing tower | 90.00 |
| 2. Wooden playset, damaged | 80.00 |
| 3. Mini trampoline | 35.00 |

**TOTAL VALUE OF JOINT INVENTORY**              **$66,120.00**

**POST PETITION INVENTORY**

1. Crib — 65.00
2. Recliner — 125.00
3. Six drawer dresser — 50.00
4. Play on nugget couch — 280.00
5. Oppsdecor bench — 100.00
6. Free weights — 50.00
7. Two Bowflex select weight sets — 700.00
8. Venq projector — 850.00

**TOTAL POST PETITION INVENTORY**				**$2,220.00**

Read and Kelley Estate Services LLC
by Joy Augustine

## APPRAISAL CERTIFICATION

- Statements of fact contained in this report are true and correct. The opinions stated, are based on a full and fair consideration of all the facts available on the date the appraisal was made.

- The reported analysis, opinions, and conclusions are limited only by the reported critical assumptions and limiting conditions, and personal unbiased professional analysis, opinions and conclusions.

- Read and Kelley Estate Services, LLC, has no undisclosed past, present or future interest in the appraised items or in any proceeds to be derived therefrom, and have no personal interest or bias with respect to the parties involved.

- Neither employment nor compensation for this appraisal were contingent upon the reporting of a predetermined value that favors the client, on the amount of the value estimate, on the attainment of stipulated results, or the occurrence of a subsequent event.

- Unless noted elsewhere an employee of Read and Kelley Estate Services, LLC, has personally inspected the listed property that is the subject of this report.

- Unless noted elsewhere, no one provided significant professional assistance to Read and Kelley Estate Services, LLC.

- This appraisal has been prepared in conformity with and is subject to the International Society of Appraisers' *Appraisal Report Writing Standard* and to the ISA Code of Ethics. In addition our analysis, opinions and conclusions were developed, and this report has been prepared in conformity with, The Appraisal Foundations' *Uniform Standard of Professional Appraisal Practice* (USPAP). Any departure from these standards were discussed with the client in advance and are noted in the report.

- The AMI has mandatory re-qualification requirements for all their members. Appraisers employed by Read and Kelley Estate Services, LLC, are in full compliance with those regulations.

*[signature]*

Read and Kelley Estate Services LLC
by Joy Augustine